We'll hear argument next in number 14-1272, In Re Midwestern Pet Foods. Mr. Can you pronounce your name? Cassini, Your Honor. Cassini, thank you. Good afternoon. May it please the court, I appear before the court today on behalf of the applicant, Appellant Midwestern Pet Foods. Midwestern Pet Foods is a family-owned manufacturer of premium pet foods and treats based in Evansville, Indiana. The issues before the court come from the decision of the Trademark Child Appeal Board with respect to the trademark Earthborn Holistic. The office required ultimately a final to require a disclaimer of the word holistic and ultimately the board held that up. And so the issues we have before the court today is whether the courts or whether the TTAB's decision to require a final disclaimer was appropriate, whether the mark is in fact descriptive, whether a disclaimer is required. And then we also raised the issue with respect to the fact that Midwestern owns any contestable registration for the exact same mark, Earthborn Holistic, for dog food rather than cat food and suggested that the office's require of a disclaimer was an impermissible collateral attack on the incontestability of that registration. So if I might first try to explain why I think the board and the examining attorney was incorrect ultimately in its finding that this was a descriptive word that is holistic and that the disclaimer was in fact required. And the reason being is, you know, that if you look at the evidence that's of record here, there's not a lot, but the office's suggestion that there's substantial evidence for the board's finding is based upon primarily these things. There are a couple definitions submitted, one from Merriam-Webster, the other from McMillan with respect to what holistic means. I'd note that there are multiple meanings in both of those listings that are in the record. None of them, of course, refer to pet food or cat food or dog food at all. There is a reference from Midwestern's own website that uses the word holistic in some advertising collateral in connection with promotion of the product. And there are also a number of third-party uses of the word holistic in connection with various types of pet food. So why is, at least taken together, maybe even not having to go that far, why is that all not enough to support a conclusion that the word holistic, though not the most precise word in the world, communicates something to consumers about the quality of the product? And I guess the description that has been used here is nourishes the whole cat. Well, for a couple reasons, I think, Your Honor. I mean, one is if you look at the evidence that the office made a record during the prosecution of the application, you'll look and see every time holistic was used, and there's not many examples here, but every time it was used as an adjective to modify pet food. In the instance of applicant-appellant here, holistic is not used as an adjective to modify the word. I mean, it's earthborn holistic. And so I'd suggest that this is one of those cases where, first of all, I think holistic, if you look at the definitions, is somewhat nebulous, and in fact, the office has treated it inconsistently if you look at the registrations, the third-party registrations that were made during, made a record. I'm not sure I understand that point. I mean, are you saying that earthborn holistic should not be understood to mean earthborn holistic cat food? Because, I mean, suppose there were Bryson's Healthy is my mark, and it's for dog food. So my trademark would read Bryson's Healthy Dog Food. Isn't that a description of the dog food? Well, I mean, I'm not certain that healthy and holistic are equivalent, but I understand the point. The question of whether the word holistic is not used as an adjective with the meaning of treating the whole cat, as you said, it's not being used in that sense, because all it says is earthborn holistic. But isn't it really earthborn holistic as a description of cat food? And why isn't that like the Bryson's holistic? Well, I think the difference... Healthy... No, I understand the court's point. I think the difference here is it's the combination of these two words, earthborn and holistic. And it's going for the whole entire commercial impression that the applicant here was trying to make, which is sort of a new age appealing to healthy earth-conscious people. And in fact, if you look at the specimens that were made of record, you'll see very clearly that this is supposed to be a healthy new age appealing to consumers who want to try to do the right thing for their pet. So if you get back to, I guess, trying to answer your question, I just don't see the same play when you're using a surname in connection with that word. I mean, it's pretty clear, and I think the court stirs prudence here. It's very clear that dividing or dividing the mark up into words and examining the component parts is not what's supposed to take place here. It's supposed to look at the whole, the holistic whole of this mark. And so I would suggest that the difference here is the pairing of the word earthborn with holistic. And so I think it changes the commercial impression. The way it's done, in my view, in the way of the applicant's view, is it's somewhat transformative here. And so that's the difference, to answer the question. And you think the same outcome as the one you're urging here would apply if the mark were earthborn healthy? I haven't looked to see what sort of evidence, as far as how the registers handled the word healthy, and I haven't seen what sort of- I'm going to guess that they regard it as descriptive. I suspect you're right, Your Honor. And I suspect there's a lot more evidence that could be marshaled to try to suggest that the word healthy is, in fact, descriptive. But I think I would probably try to come down the same way I've come here today. Well, I'd say that as a litigator you would, but I mean, if you were, do you think that that's a- It's a weaker case. I think your example is clearly a weaker case. So getting back to the premise, if you buy my premise, the court doesn't really have to go any much further than that, because the office dissected the mark instead of interpreting it in the unitary sort of transformative way in which we suggest it should be. And so therein, with it being unitary, there would be no legal requirement or need or necessity to disclaim the word holistic. If the court's not willing to go there, though, we suggest that there is a fairly easy and hopefully appealing way to get to the same sort of outcome, which is to look at sort of the jurisprudence of this court and the board, which I would also add is very tiny. There's basically one case that this court decided in 1985, the Lowe's case, and the board, frankly, hasn't had many cases either, which is the In Re American Sail Training Association, or sort of the Tall Ships case, where we look at sort of this issue as to whether is the office trying to collaterally attack impermissibly this incontestable registration. And so if we look at those cases... How would this be a collateral attack as opposed to a refusal to extend? Well, I mean, ultimately, the registration that the client has is for earthburn holistic, two words, block letters, for dog food. And the new application is the exact same thing, but for cat food. And you can keep using it for dog food with whatever benefits you get from the incontestability of that. Yes. I mean, I suppose if you want to look back historically, perhaps the applicant should have identified its goods originally as pet food, as opposed to dog food or cat food, because that description is in fact permissible at the Patent and Trademark Office pursuant to the DTAB and the TMEP and the Acceptable Goods and Services Manual. In this instance, that wasn't done, because at the time, the goods were, in fact, dog food. And I think, honestly, the applicant decided to identify them precisely for the goods they had, dog food. In this instance, ultimately, this company did, in fact, start making cat food under the same brand, same label. And so they filed an application, assuming that it would be treated uniformly and examined in the exact same way that its prior application had been done. So I'm not sure if I understood exactly what you meant by an extension. If you meant by extension, sort of filing an additional application for… No, no. You said that this is a collateral attack on the dog food mark. And it seems to me, if you can keep using the mark without challenge, at least by the PTO, to that mark, there is no collateral attack. What's happening is that when you have sought to extend the range of products on which you want to use the mark, the PTO can decide the matter afresh. And if it decides, by assumption now that we're at this point, that the normal registration standards do not allow the registration of the mark without the disclaimer, it's free to do that. So it refuses to extend the incontestability from dog food to cat food. I understand the court's point. I think what practically is happening here is the applicant, Midwestern, in this instance, wanted to try to protect what it, in fact, was doing. And in the context of an enforcement or litigation trying to enforce this mark vis-a-vis a third party for infringement, if it were, for instance, cat food and the registration were for dog food, there may be some courts who might not be willing to go there. But if, in fact, this new registration were to issue and there were a disclaimed term, it clearly would be undercutting. I mean, it would become part of the record. And I suppose even these appeals will become part of the record of some underlying litigation that will somehow try to undercut and undermine this incontestable registration and attack whether this word holistic in connection with the product here is, in fact, descriptive or not. So that's, I think, kind of a long way of going around to try to answer the court's question there. Okay. I assume there's different records in this current trademark application and the original trademark application? Yes. Yes, Judge Shen. Absolutely, that's the case. I mean, I think... And then you judge, I guess, registrability based on the time of filing? Well, that is sort of the accepted principle, and I think I wouldn't quibble with the black letter law of that. But if you look at the evidence that is of record, and I would suggest that to you it's not substantial. But if you look at it, all of it is certainly post prior registration of the original Earthburn holistic mark. And so I'd suggest that the applicant here is somewhat being penalized in a way, and again, sort of attacking its rights that it's perfected here by looking at this evidence that's been put together sort of after the fact. Because ultimately, when this original application was filed and registered, I don't think there's any suggestion that the office made a mistake. I mean, there was nothing that the office suggested that they made a mistake at that time. They didn't have any evidence to suggest that anybody was, frankly, using holistic in any way, shape, or form in a descriptive way in connection with pet food. Now they have a few instances that are sort of post prior registration of the dog food post prior registration. Thank you. We'll hear from you. May it please the court. There is substantial evidence in the record here that holistic is merely descriptive of cat food. Substantial evidence isn't about quantity. It's about quality. And here we have four kinds of evidence that are routinely accepted as sufficient to show that a term is merely descriptive. We have dictionary definitions that define holistic as concerned with wholes or complete systems. That is exactly the meaning that Midwestern uses on its webpage for its birth-born holistic cat food, where it speaks that it takes a holistic approach to nutrition, nourishes the whole cat. It's formulated to provide nutrition to every part of your cat's system. And what we're concerned about when we're talking about descriptiveness is the mark in context. It's not an abstract inquiry. It is about the mark for these goods. So when Judge Bryson was giving the example that it shouldn't be earth-born holistic cat food, that's correct. You have a mark in relation to particular goods or services. Their prior registration here is for dog food. They have now come in for cat food. We are looking at the meaning of earth-born holistic in relation to cat food. This is not a case where we're saying the entire mark is merely descriptive. It is about a component term, the meaning of the word holistic. And this record shows with substantial evidence and really very solid evidence that that word is merely descriptive. We also have, importantly, third-party use. There's a number of other pet food manufacturers that offer holistic pet foods. They should be free to continue to do so and to know that holistic is not an exclusive domain of use by Midwestern here. There's also third-party registrations on the register where the term is either disclaimed or registered as part of a mark based on acquired distinctiveness or on the supplemental register. This is all evidence that holistic is merely descriptive. And Midwestern really doesn't challenge any of this evidence. They point to the combination of holistic with earth-born being somehow transformative, but they don't really say what other meaning it conveys. For a mark to be unitary, the elements have to be inseparable. There's nothing inseparable here about the combination of earth-born and holistic. Holistic still means what it means, that it's concerned with the whole, that it nourishes the whole cat. As to their incontestable registration, the argument has sort of morphed from the Blue Brief to the reply. In the Blue Brief, it was about, well, the PTO shouldn't require a disclaimer of holistic because it wasn't disclaimed in that original registration, and that would be inconsistent. And now it's an accusation against the agency that it's an improper collateral attack on the rights they have in that registration. But as Judge Toronto pointed out, it really is just a refusal to extend. It is not a collateral attack. And that's because incontestability, and this Court has addressed this argument in the past in several different cases, incontestability is about the right to use a mark in commerce. That's what becomes incontestable. And it is the mark, as the statute says in Section 15 U.S.C., Section 1115b, that the registration becomes conclusive evidence when it's incontestable of the right to use the registered mark. But such conclusive evidence, quote, shall relate to the exclusive right to use the mark honoring connection with the goods or services specified in the affidavit filed under the provisions of Section 15. In other words, you have a registered mark. It is for the particular mark in the form it's registered for the particular goods that it covers. That registration covers dog food. Nothing about the refusal here implicates any rights that they have in that registered mark for dog food. Why wouldn't it implicate those rights? I mean, why wouldn't the refusal of this identical mark for cat food cast a deep, dark, grave shadow over their registered mark for dog food? It doesn't cast any shadow, because it's different goods. And to the extent that they have a regis- Oh, you're almost smiling when you're saying that. To the extent that they have a registration without a disclaimer, this court has acknowledged what the significance of a disclaimer is or isn't. And the absence of a disclaimer does not mean that that component of the mark must be treated as distinctive. The court addressed this at In re National Data Court. That's at 753 F. 2nd, 1056. And we talk about it in our red brief on pages 22 and 23. That was a case that involved the applicant had applied for the mark cash management exchange. It was a likelihood of confusion refusal where the office cited a registration owned by Merrill Lynch for cash management account. There was no disclaimer in that registration for cash management account. And what National Data said was, well, look, cash management is descriptive. I'm just going to disclaim it in my application. And I want to argue that it's descriptive and shouldn't be the basis of this likelihood of confusion refusal. The board had effectively agreed with that, saying, well, you know, it's not disclaimed in Merrill Lynch's registration. So we have to presume that those words are distinctive. The court emphatically disagreed with the board. And it said that, I'll quote because it's a fairly effective quote. The absence of a disclaimer does not, however, mean that a word or phrase in a registration is or has become distinctive in the registered mark so that that part of the mark must be treated the same as an arbitrary feature. It went on to note how the practice of disclaimer for the office is discretionary. It's been inconsistent. But further, that the registration affords prima facie rights in the mark as a whole, not in any component. And so the showing of descriptiveness or genericness of a part of a mark does not constitute an attack on the registration. The agency filed a tallship case. Does it believe that that's the right way to handle that kind of situation? Well, that kind of situation is very different from what we have here. Because the tallship. It's a close cousin. I wouldn't really even characterize it as a close cousin because that was the entire registered mark. Again, here we're just talking about a component, the word holistic. This isn't a case where they had earthborn holistic and we're saying earthborn holistic can't be registered. We're saying the holistic component has to be disclaimed in order for the whole mark, earthborn holistic, to be registered. So we're actually, I mean, disclaimers are designed to enable registration of a mark that contains an unregisterable component. This is not a situation where we're saying the whole thing is unregisterable. The refusal is that the whole thing can't be registered unless it's disclaimed. However, it is really just about a component where tallship, that was a case where tallship was registered for services of organizing, arranging, and sponsoring sailing races. The next application that they filed was return of the tallship and the office was requiring a disclaimer of tallship. That application was for the identical services that were covered by the incontestable registration. So in effect, the office was requiring a disclaimer of the entire mark that was incontestable under that prior registration. That's why that case is different. Isn't that the key to the exception to the general rule, as I understand it, that the office's prior actions do not bind it in subsequent cases, that there's an exception for the exact same product or service? And if tallships had been invoked as a name for, let's say, selling speedboats or something like that, the office would have felt perfectly free to say no, even though tallships had been authorized as a registered mark for that particular service. And hence, notwithstanding that dogs and cats have a lot in common, there's a difference between them. That's your argument, right? That's correct. I mean, that applies whether there's a disclaimer or not. It applies if that's the whole registered mark or not, right? That's exactly right. And as Judge Chen had pointed out earlier, the records are very different. Well, but even if the records were identical, right, you would still say that under your policy and under the law as you seek to apply it, that you don't get to cite the prior reference as being binding on the board if it's for a different product, even if it is a close cousin of the product that's in question, right? That's correct. So the record really is just sort of an add-on. It is an add-on, yes. What's required for incontestability? What are the prerequisites to get that? Basically, five years of use. And then the registration is subject to challenge only on very limited grounds. And then if you file an affidavit under Section 15 of the Act, that is the incontestability affidavit, and then that's shown on the PTO's records. And speaking of the PTO's records, the reason why the disclaimer here is important is because we're not supposed to register marks that have unregisterable components in them. And by having a disclaimer of holistic, when we have the evidence today that shows it clearly is descriptive in relation to pet food and cat food in this instance, it's a public notice function. Others searching the register will see that, oh, there's not exclusive rights in holistic. Midwestern has rights in earth-born holistic together, but not exclusively alone in the word holistic. And that's what these other third-party registrations where the term has been disclaimed for pet food products also indicate. And, you know, it's basically about keeping descriptive words free for others to use. And so the fact that they got a registration before where it wasn't disclaimed doesn't mean that they get another registration today where we have the evidence that shows that word is descriptive. The Court has no further questions. Thank you very much.  Thank you, Your Honor. If I could have just one issue that I didn't in my original, which was the premise that we raised in our briefing that doubts and ambiguities are supposed to fall in the favor of the registrant or the applicant in this instance. And the office took a fairly interesting approach in suggesting that the office actually had. Basically, what the office argues is that— Go in favor of the applicant? Yeah. I thought I'm aware of a rule that if there's like a competition between two trademark owners, the doubt of the case rule in favor of the senior trademark holder, maybe a likelihood of confusion case or something like that. But you're saying it goes all the way across the board for all applicants? It does go across the board, and I don't think the office has argued there. It's sort of a tipping scale sort of thing. I think where there's some issue on closeness, and I'd suggest that there is some issue on closeness here, it's supposed to go in the favor. I mean, the idea of the office is to actually issue registrations, not stop them. And so when there's somewhat of an ambiguity, it's supposed to tip in the favor of the registrant and the applicant. In this instance, the office argued, well, the examining attorney clearly didn't have any ambiguity, and the TTAB clearly didn't have any ambiguity. So clearly, there wasn't any ambiguity, so you wouldn't have been entitled to that anyhow. I mean, they say in their own briefing that we would be entitled to that, but they say by virtue of the examining attorney's final office action and TTAB that we're not. Well, that's kind of the proverbial rabbit in the hat. There's never likely to ever be a case that would come before where the examining attorney said he had some ambiguity or the board said it had some ambiguity in its findings. So I would like the court to look at that when it does sit down to ultimately decide this. With respect to the office, frankly, grossly overstates the effect of this claim. You should wrap up. I'm sorry. No, no, just wrap up. I think the office has grossly overstated the effect of a disclaimer of holistic here. It's not trying to give some sort of monopoly right to Midwestern pet foods over that word. That's not at all what it means. It's in connection with that unitary mark. And so, again, I'd refer back to sort of our argument in briefing in connection with the issue of the collateral attack here, because I think it's pretty clear that there is. And so for those reasons and the reasons in our briefing, we'd ask that the court reverse the board's decision. Thank you very much. The case is submitted.